COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Petty, Chafin and Senior Judge Annunziata


JOSHUA SEXTON

MEMORANDUM OPINION*

v.      Record No. 2115-13-3                                          PER CURIAM
                                                                     APRIL 15, 2014

DICKENSON COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF DICKENSON COUNTY
Henry A. Vanover, Judge

(Charles H. Slemp, III; Slemp Law Office, PLLC, on brief), for
appellant.

(Laura Faye Robinson; Cynthia Short, Guardian *ad litem* for the
infant children; Short Law Firm, PC, on brief), for appellee.


Joshua Sexton appeals the trial court's order terminating his parental rights to his four

children pursuant to Code § 16.1-283(C)(2).  Sexton argues that the evidence was insufficient to

prove he was unable or unwilling to substantially remedy the conditions that led to the foster care,

that the trial court erred in denying his request for an additional six months to rectify the situation,

and that the trial court erred in determining that it was in the best interests of the children to

terminate his parental rights.  Upon reviewing the record and briefs of the parties, we conclude this

appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  See

Rule 5A:27.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence,

considered the statutory requirements, and made its determination based on the child's best

interests.'"  Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).  The

trial judge's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal

unless plainly wrong or without evidence to support it.'"  Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Peple v. Peple, 5

Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  Id.

So viewed, the evidence proved that on June 28, 2012, Sexton's four children were living

with Sarah Sexton, Sexton's wife and the mother of the four children (mother), and the Dickenson

County Department of Social Services (DCDSS) removed the children due to physical neglect,

inadequate supervision, poor housekeeping, inadequate food, and the failure of mother to take her

medication.[1]  At the time of removal, Sexton had been incarcerated since December 3, 2011.

The removal on June 28, 2012 was the second foster care removal for the children.  On

August 23, 2011, the City of Norton Department of Social Services (NDSS) removed the children

due to domestic violence, drug abuse, lack of shelter, and mother's mental health issues.  In August

2011, Sexton, mother, and the children were residing with Kimberly Hamilton, Sexton's sister.

While living with Hamilton, the police responded to Hamilton's residence at least three times due to

domestic violence.  One goal of the foster care plan was to provide a safe and stable home for the

children.  NDSS immediately referred the children to the Children's Advocacy Center for

counseling due to inappropriate sexual behaviors.  NDSS provided Sexton and mother with

substance abuse counseling, domestic violence counseling, anger management, grief counseling,

marital counseling, drug screens, visitation, and transportation.  The only service Sexton completed

---

[1] Mother agreed to the termination of her parental rights to the four children, S.S. born on October 14, 2004, R.S. - - born on June 25, 2009, J.S. - - born on September 8, 2010, and S.S. - - born on July 25, 2011.

prior to his incarceration was a six-hour Moral Recognition Therapy course and weekly visits with the children. In November 2011, Sexton and mother obtained housing in Dickenson County.

On December 3, 2011, Sexton was arrested for discharging a firearm in an occupied building and possession of a firearm after having been convicted of a felony.[2] The children were returned to mother in May 2012 while Sexton remained incarcerated, but DCDSS removed the children from mother the following month. Sexton was scheduled to be released from incarceration in February 2014.

On August 26, 2013, which was approximately fourteen months after DCDSS took custody of the children, April Collins, a DCDSS Family Services Specialist, contacted Sexton and informed him that DCDSS would be seeking termination of his parental rights. Collins testified Sexton was angry during the phone conversation. Sexton admitted he was angry during the conversation, but explained that the conversation began with the question whether he was ready to give up his parental rights. DCDSS investigated and found no relatives that were willing and suitable to care for Sexton's children. DCDSS investigated Hamilton and determined that her residence was not appropriate because she lived in a two-bedroom trailer with her husband and their four children. Hamilton's husband was an alcoholic, and their children frequently stayed with a grandmother due to her husband's behavior. Hamilton also had chronic health issues.

At Sexton's termination hearing, mother testified Sexton verbally and physically abused her for twelve years, but Sexton denied being abusive towards mother. Although Sexton admitted he and mother argued frequently, he testified the arguments were normal arguments between spouses. Mother testified Sexton watched the Playboy Channel while the two older children were present.

---

[2] Mother testified Sexton was attempting to commit suicide and she grabbed the firearm from Sexton. Sexton testified he was not attempting to commit suicide, but he and mother argued, mother pulled out the firearm, and it discharged while he tried to get the firearm away from her. Sexton pled guilty to the charges.

Sexton denied doing that, but agreed mother removed the Playboy Channel from their cable subscription plan. Mother testified she witnessed Sexton "huffing" glue on numerous occasions prior to his incarceration, but Sexton denied he "huffed" glue.

Sexton testified he was planning on living with Hamilton upon his release from incarceration. Hamilton testified Sexton and his children could live with her. Sexton admitted it would take him at least three to six months to be able to provide for the children. Sexton testified a friend was keeping a trailer for him while he was incarcerated. At some point while he was incarcerated, Sexton completed parenting classes. In 2012, Sexton completed substance abuse counseling and anger management counseling. In 2013, Sexton completed life skills classes. Sexton wrote a total of sixteen letters to his four children while incarcerated. Sexton has not seen the children since his incarceration in December 2011.

The oldest child was placed in a foster home, has bonded with the family, and wants to be adopted by the family. The second oldest child was placed in another foster home, has bonded with the family, and there have not been any problems with the child acting out sexually. The two youngest children were placed in the same foster home, the children have bonded with the family, and they do not know any other caregivers. Collins has grave concerns about placing the children together because the two older children sexually assaulted each other and sexually assaulted the two younger children.

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence that:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement

in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Decisions to terminate parental rights under Code § 16.1-283(C) "hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005).

In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

"'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

While Sexton's incarceration, standing alone, is not sufficient to support the trial court's termination of his parental rights, "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support [the] court's finding that the best interests of the child will be served by termination." Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). By the same token, Code § 16.1-283(C)(2) contains no excuse for a parent's failure to remedy the conditions leading to

- 5 -

foster care because he has been incarcerated for over twelve months subsequent to the child's placement in foster care.

While incarcerated, Sexton did take additional classes on substance abuse, anger management, and life skills, but it was only after DCDSS took custody of the children for a second time. Since his incarceration in December 2011, Sexton wrote a total of only sixteen letters to his four children. There was no evidence that Sexton attempted to schedule in-person or telephonic visitation with the children while he was incarcerated. The children have bonded with their foster families, and the two younger children have not known any other caregivers.[3] DCDSS has concerns of the four children living together due to the history of the two older children sexually abusing each other and the two younger children.

There was no evidence that Sexton will ever be able to care for his children. When he was not incarcerated and NDSS had custody of his children, Sexton completed only one requirement of the NDSS care plan, which was a six-hour course on Moral Recognition Therapy. Prior to his incarceration, Sexton failed to enroll or complete substance abuse counseling, domestic violence counseling, anger management, grief counseling, or marital counseling. There was also no record of Sexton participating in drug screens as required by the NDSS care plan. Prior to NDSS removing the children, Sexton exposed the two older children to sexually explicit television programs. When taken into custody by NDSS, the children were immediately referred to the Children's Advocacy Center for counseling due to inappropriate sexual behaviors. The December 2013 incident involved a firearm, and Sexton subsequently pled guilty to two felony charges. The December 2013 firearm incident occurred after NDSS took custody of the children when Sexton was supposed to be working on regaining custody of his children. "'[P]ast actions and relationships over a meaningful

_____

[3] When Sexton was incarcerated in December 2011, his third child was approximately fifteen months old and his fourth child was approximately five months old.

period serve as good indicators of what the future may be expected to hold.'" <u>Linkous v. Kingery</u>, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting <u>Frye v. Spotte</u>, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

Sexton's plan was to live with Hamilton after release from incarceration, but Hamilton lives in a two-bedroom trailer with her alcoholic husband and four children. Hamilton's four children frequently stay at a grandmother's residence due to the behavior of Hamilton's husband. DCDSS found that Hamilton's residence was not a suitable living situation for the children. According to Sexton, a friend was holding a trailer for him while he was incarcerated, but there was no evidence of the trailer's location, its size, or its condition to determine if it would be suitable housing for the children. There was no evidence of Sexton's plan regarding employment and a plan to financially support the children. There was no evidence of Sexton's plan concerning his relationship with mother. At the time of Sexton's termination hearing, mother's parental rights had been voluntarily terminated and Sexton and mother were still married. There was no evidence that an additional six months would change Sexton's ability to provide suitable and stable housing for the children and to meet his children's needs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." <u>Kaywood v. Halifax Cnty. Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We cannot say that the trial court erred in finding that the evidence was clear and convincing that Sexton has been unable or unwilling to substantially remedy the conditions that led to the placement of the children in foster care, that an additional six months would change the situation, and that it was in the best interests of the children to terminate Sexton's parental rights.

Accordingly, the trial court did not err in terminating Sexton's parental rights under Code § 16.1-283(C)(2).

Affirmed.